J-A14005-17

2017 PA Super 268

| | | |
|---|---|---|
| M.J.N ., | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| J.K., | | |
| | Appellee | No. 330 EDA 2017 |

Appeal from the Order Entered December 23, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2009-FC-1636

BEFORE:  BENDER, P.J.E., BOWES, J., and SHOGAN, J.

OPINION BY BENDER, P.J.E.: **FILED AUGUST 18, 2017**

M.J.N. (Father) appeals from the December 23, 2016 order that awarded J.K. (Mother) and Father joint legal custody of Z.K. (Child) (born in June of 2009), and awarded Mother primary physical custody of the Child and Father partial physical custody in accordance with a schedule delineated in the order.  The order also held Mother in contempt for not complying with the prior custody order.  After review, we vacate in part, affirm in part, and remand.

The trial court set forth a summary of the factual and procedural history of this case in its Pa.R.A.P. 1925(a) opinion, stating:

> The parties' child, Z.K., was born out of wedlock [i]n June [], 2009.  [Father] filed a Complaint in Custody on December 21, 2009.  Since March 12, 2012, the parties have been exercising custody pursuant to a stipulation into which they entered on that date.  Pursuant to the stipulation, the parties agreed to shared legal custody of their son, and alternating physical custody on a

two-week rotation with a roughly fifty-fifty split of custodial periods with the child.

On June 21, 2016, [Father] filed a Petition for Contempt and Modification of Custody Order. The contempt component was based upon [Father's] allegation that [Mother] withheld the minor child on several occasions during which exchanges were supposed to occur, including one specific incident where the child allegedly missed a keyboard lesson. [Father] asserted that [Mother] would not bring the child to [Father's] residence unless [Father] was physically present despite the fact that [Father's] live-in girlfriend was home at the times at issue. [Father] further claimed that [Mother] could be heard on the phone while [Father] was speaking to the minor child and that [Mother] coached the minor child on what to say.

On December 1, 2016 and December 2, 2016, the [c]ourt conducted a custody trial during which both parties were represented by counsel. The [c]ourt also conducted an *in camera* interview of the minor child.

On December 23, 2016, the [c]ourt issued an Order granting in part and denying in part [Father's] Petition for Modification. The Order reviewed each of the factors for a custody determination and made specific factual findings with respect to each factor. 23 Pa.C.S.[] §§ 5328, 5329.1. The [c]ourt granted [Father's] Petition for Contempt and held [Mother] in contempt for failing to comply with the parties' March 12, 2012 stipulated custody schedule. As a remedy, the [c]ourt awarded [Father] make-up custodial time.

On January 10, 2017, [Father] filed a Motion for Reconsideration and a Motion to Open the Record in order to present additional evidence. Both of the foregoing motions were denied by Order dated January 12, 2017.

[Father] filed the instant Notice of Appeal on January 23, 2017, along with a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

Trial Court Pa.R.A.P. 1925(a) Opinion (TCO), 2/16/17, at 1-2.

As noted by the trial court, after entry of the December 23, 2016 order, Father filed the instant appeal and raises the following issues for our review:

A. Whether the Trial Court committed an Error of Law and Abuse of Discretion in issuing the Order entered on December 23, 2016, as it failed to award Father Primary Physical Custody of the [C]hild, contrary to the best interest and general welfare of the subject minor Child where the totality of the facts and evidence of Record elicited at Trial support an award of Primary Physical Custody to Father, when considering the same in light of the Factors identified in 23 Pa.C.S.[] § 5328?

B. Whether the Trial Court committed an Error of Law and Abuse of Discretion in issuing the Order entered on December 23, 2016, as the Schedule imposed will serve to damage and substantially impact the relationship between Father and the Child as there will be, pursuant to the Order, periods of time when Father will go as many as ten (10) days without personal contact with the Child?

C. Whether the Trial Court committed an Error of Law and Abuse of Discretion in issuing the Order entered on December 23, 2016 in not including a Right of First Refusal or affording Father extra time in the Summer, or on days where the Minor Child does not have school to make up for his significant loss of custodial time with the child?

D. Whether the Trial Court committed an Error of Law and Abuse of Discretion in issuing the Order entered on December 23, 2016, as the facts and evidence of Record elicited at Trial in this matter, as well as the Trial Court['s] finding Mother in Contempt, demonstrate that Father is more likely than Mother to encourage frequent and continuing contact between the Child and the other Parent, and this factor should weigh heavily in favor of Father?

E. Whether the Trial Court committed an Error of Law and Abuse of Discretion in issuing the Order entered on December 23, 2016, as the facts and evidence of Record elicited at Trial in this matter demonstrate that Father is more likely than Mother to maintain a loving, stable, consistent and nurturing relationship

with the Child and this factor should weigh heavily in favor of Father?

F. Whether the Trial Court committed an Error of Law and Abuse of Discretion in issuing the Order entered on December 23, 2016, as the facts and evidence of Record elicited at Trial in this matter demonstrate the level of conflict between the Parties and their willingness … to cooperate with one another, and this factor should weigh heavily in favor of Father?

G. Whether the Trial Court committed an Error of Law and Abuse of Discretion in Denying Father's Motion in Limine to Preclude the Testimony of the seven (7) year old Minor Child despite Evidence of Mother's influence upon the Minor Child regarding Father, and history of attempting to influence and tamper with witnesses during the pendency of this matter?

Father's brief at 4-5.

When presented with child custody matters, we are guided by the following scope and standard of review:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.D. v. M.P.* 33 A.3d 73, 76 (Pa. Super. 2011) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010)).

The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being. *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)). Furthermore, we recognize that the Child Custody Act governs all proceedings commenced after January 24, 2011. The specific factors that a court must consider are listed at 23 Pa.C.S. § 5328(a)(1)–(16). *See E.D.*, 33 A.3d at 79-80 (holding that "best interests of the child" analysis requires consideration of all section 5328(a) factors).[1]

---

[1] Section 5328 sets forth the following factors to be considered by the trial court:

### § 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

*(Footnote Continued Next Page)*

*(Footnote Continued)*

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

*(Footnote Continued Next Page)*

In light of Father's issues, we reproduce the trial court's discussion relating to each of the section 5328(a) factors as found in the court's December 23, 2016 order.

> 1. <u>Which party is more likely to encourage and permit frequent and continuing contact between the child and another party</u>. - This [] factor is weighed slightly in favor of [Mother]. The testimony indicated [Father] is not always able to be present at the time [the child] is dropped off for the [Father's] custodial periods. While his live-in girlfriend is seen by both parties to be an appropriate caregiver, [Father] alleges [Mother] refuses to leave the child in the girlfriend's custody. [Mother] portrays herself as the selfless parent in this relationship, but [Father] testified [Mother] speaks to him in rude and derogatory terms.
>
> For his part, [Father] claims [Mother] interferes not only in his exercise of physical custody, but also in his attempts to speak to the minor child on the phone. [Father] claimed [Mother] will manipulate the custodial schedule and interfere in activities he has planned with the child, such as on Father's Day. [Mother] claims she e-mailed [Father] a couple of times to verify the pick-up time clearly stated in the prevailing custody order to see if she could attend church with the child. The [c]ourt concludes the truth is somewhere between the versions of the parties.
>
> 2. <u>Present and past abuse committed by a party or member of the party's household, whether there is continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child</u>. - This factor is weighed in favor of [Father]. [Father] offered a number

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S. § 5328.

of witnesses to support the contention [Mother] has been physically, verbally, and emotionally abusive to [Father]. However, there was not any evidence [Mother] abused the minor child. There was not any evidence indicating or even implying [Father] has been abusive to the minor child.

3. The parental duties performed by each party on behalf of the child. - This factor is weighed slightly in favor of [Mother]. She is primarily a stay at home mother who works refinishing and repurposing furniture in her garage. As a result, she is the parent who most frequently is involved in taking the child to and from school, to and from athletic practices, and to medical or dental appointments. Each parent testified to their ability to ensure the child is fed, clean, and dressed appropriately. Each parent appropriately attempts to keep the child involved in extracurricular programs. [Father] has tried to interest the child in playing the keyboard, while [Mother's] interests seem more focused on keeping the child enrolled in athletic activities.

4. The need for stability and continuity in the child's education, maturity, and judgment. – This factor is weighed in favor of [Mother]. While there is nothing wrong with [Father's] having a busy professional life that requires occasional travel on business out of the area, for the simple fact that [Mother] is more physically available, she is able to offer more stability and continuity in the child's life. She is also more attentive to taking the child to athletic practices. She attends his games and competitions more frequently than [Father]. Because of the interest by the parties in keeping the child in his current school with his friends, [Father] also faces a challenge in transporting the child back to school on weekday mornings as well as to athletic practices in the evening.

5. The availability of extended family. - This factor is weighed in favor of [Mother]. [Father's] parents live in Vermont, where he takes the minor child to visit during vacations. He does not have any other family in the area, although he lives with his girlfriend and they have discussed getting married. [Mother] lives with her other son, with whom the minor child has a very strong attachment. While [Mother] does not speak with her biological parents or her sister, she has been able to keep up a cordial and close relationship with her grandparents and the mother of her former paramour, Ms. Andrews. [Mother] speaks with Ms.

Andrews each day and Ms. Andrews takes both boys out for dinner each Monday night.

6. The child's sibling relationships. - This factor is weighed in favor of the [Mother]. As stated above, [Mother] has another son from a previous relationship. That boy, who is two years older than Z.K., is a constant companion and playmate for Z.K. [Mother] also had a daughter who unfortunately passed away when she was approximately four years old. The loss of this child lingers over the relationship between the parties and their son.

7. The well-reasoned preference of the child, based on the child's maturity and judgment. – This factor is weighed in favor of [Mother]. During an *in camera* session with the minor child, in which both parties waived their personal attendance and that of their respective counsel, the [c]ourt was able to learn of the strong attachment the minor child has to his half-brother. Although this may be an aspect of his relatively young age, the potential of not being around his half-brother Owen and participating in activities with him is the single largest impediment to [Father's] being able to establish the case for primary physical custody.

In addition, moving forward, [Father] is strongly urged to make more of an effort to take his son to the practices for the child's various athletic activities, to have the child there on time, and to attend as many practices and competitions as he can, even those events on [Mother's] custodial periods. It is also important for [Father] and his paramour to understand they have a growing boy to help raise who is not and does not want to be treated as if he is a toddler.

8. The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm. – This factor is weighed in favor of [Father]. There was substantial evidence of [Mother's] rudeness and intimidating personality, including cursing and uttering derogatory comments about [Father] in the presence of the minor child. Whether one believes the minor child was coached or not by [Mother], based on the [c]ourt's observation during the *in camera* session, this behavior by [Mother] seems to have made little impact on the

child.  There was not any evidence of [Father's] attempting to turn the child against [Mother].

9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. - This is a neutral factor.  Both parents testified to their love and care for their son.  They both possess the qualities and capabilities to provide for a loving, stable, and consistent environment for the child.  Based on the *in camera* testimony, it is clear to the [c]ourt [Father] and the minor child have two very different perceptions of the level of involvement between [F]ather and child.  [Father] has a busy professional life, but the [c]ourt suggests he become more actively engaged when he is at home with his son.  [Mother] is able to take the child to school, to his practices, and have him home and in bed on a routine schedule, but she must also recognize the importance of encouraging the relationship between the child and [Father].

10. Which party is more likely to attend to the daily physical emotional, developmental, educational, and special needs of the child. - This factor is weighed slightly in favor of the [Mother].  Again, by sheer weight of the fact she has performed most of the daily activities of getting the child to school, to his athletic practices, and to any medical or dental appointments, she has a longer record of performing these tasks.  The presence of the minor child's half-brother cannot be understated in its effect on the child's entire outlook on all custodial questions.

11. The proximity of the residences of the parties. - The parties are approximately 20-30 minutes apart, based on the amount of traffic when one is driving between Coplay where [Mother] lives and Upper Macungie where [Father] resides.  This factor is weighed in favor of [Mother], based on her proximity to the minor child's school and to his athletic practice location.

12. Each party's availability to care for the child or ability to make appropriate child-care arrangements. - This factor is weighed slightly in favor of [Mother].  As stated above, because [Mother] works from home, she does not need to rely on any back up child care.  If needed, she can call upon the grandmother of the minor child's half-brother to watch the children. [Father] is at work during the day, but his paramour is able to arrange her work schedule so that she can be home

when the minor child arrives for his custodial periods. However, if the child had to come home from school because he is sick, it seems [Mother] is the only one who could accommodate that situation without any great difficulty.

13. <u>The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party</u>. - This factor is weighed in favor of [Father]. [Father] presented ample testimony that [Mother] is rude, combative, and possibly a very unpleasant person to be around to her neighbors and former boyfriends. She has a history of physically assaulting men in her life, and an apparent tendency to lie on numerous occasions when confronted with a number of discrepancies about her conduct. She has also formed a close bond with the minor child which remains unshaken even after all the obnoxious conduct to which she may have exposed her son. [Father] appears to be a caring individual who is portrayed as being distracted by his professional responsibilities. The testimony about [Father's] level of interaction with the [Mother's] family during the physical decline and eventual passing of [Mother's] daughter raises questions about his honesty, but has little to do with his relationship with the minor child.

14. <u>The history of drug or alcohol abuse of a party or member of a party's household</u>. - This is a neutral factor. Neither party characterized the other as abusive of drugs or alcohol.

15. <u>The mental and physical condition of a party or member of a party's household</u>. - This factor is weighed slightly in favor of [Father]. While neither party nor the other extended family members displayed any physical or mental health conditions which would impair their ability to care for the child, the wildly varying contradictions in the depictions of various episodes in the lives of the parties leads the [c]ourt to conclude it will require each party to obtain a mental health evaluation within 60 days of the date of this Order. Said evaluation will be for the purpose of determining if either or both parties are recommended for any follow-up treatment or counseling as it relates to the ability of the parties to co-parent and to participate in raising their son.

16. <u>Any other relevant factor</u>. - This factor is weighed in favor of [Father]. [Mother] admitted she pled guilty to a summary level offense of harassment in New Hampshire in 2009. [Mother] was criminally charged after an altercation with [Father]. Beyond that one incident, [Mother] was described as frequently assaulting both [Father] and the man she was involved with in the last two years. This indicates to the [c]ourt the mental health evaluation of [Mother] also needs to include an evaluation if she needs to attend anger management training.

Trial Court Order (TC Order), 12/23/16, at 1-5 (footnote omitted).[2]

With regard to his first issue, Father begins by claiming that the court should have awarded him primary custody of the Child because the facts elicited from the evidence support such a conclusion in relation to the section 5328 factors. Father argues that the court over-emphasized the Child's relationship with his half-brother, Mother's child from a prior relationship, who lives with her. To illustrate his claim, Father quotes the court's statement that "[a]lthough this may be an aspect of his relatively young age, the potential of not being around his half-brother … and participating in activities with him is the single largest impediment to [Father's] being able to establish the case for primary physical custody." TC Order at 3 (Factor (7)). Father also notes the court's statement that "the presence of the minor child's half-brother cannot be understated in its effect on the child's entire outlook on all custodial questions." *Id.* at 4 (Factor

_____

[2] The court also stated "[t]here is not any evidence of any determination of abuse or neglect by a child protective service agency against either party." *Id.* at 5.

(10)). Father further explains that the Child's half-brother has stayed at Father's home on numerous occasions when Father has had custody of the Child, a fact not contradicted by Mother in any way. Furthermore, Father's mother testified that she has a strong relationship with the Child's half-brother and that she treats him like a grandson. Essentially, Father asserts that without evidence to the contrary, these factors "should be considered neutral and not weighed in favor of Mother as the [t]rial [c]ourt determined." Father's brief at 11-12. Father also notes that the boys are four years[3] apart in age and do not attend the same school. Therefore, a change in custody would not affect the Child's time with his half-brother during the school day.

Next, Father centers his argument on the trial court's finding that Mother's working from home was a valid basis for determining in Mother's favor factors (10) and (12), as well as factor (3). In other words, the court found that Mother was more likely to attend to the daily physical, emotional, developmental and educational needs of the Child, was more available to care for the Child or arrange for appropriate childcare, and to perform parental duties, simply because she worked at home. In response, Father acknowledges that he travels approximately three days per month, but is

---

[3] A search of the record does not provide a birth date for the Child's half-brother. While Father asserts that the boys are four years apart in age, the trial court states that they are two years apart. *See* TC Order at 2 (factor (6)).

generally able to schedule his travel on days he does not have custody of the Child, a fact about which Father's fiancee likewise testified. Father also points out that Mother testified that due to Father's travel for work he was often unavailable to exercise his custody time. However, Father claims that no evidence supported Mother's contention, and in fact, Mother had several times requested Father to take custody of the Child earlier than called for by the prior custody schedule.

Father also references the court's finding that Father has had difficulty in transporting the Child to school on weekday mornings and to athletic practices in the evenings as this relates to factor (4). In other words, the court found in favor of Mother regarding the need for stability and continuity in the Child's education, maturity and judgment. Again, Father argues that no evidence in the record supports this finding. Rather, he claims that the evidence shows no problems with regard to his ability to transport the Child in a timely manner and that the court's order now on appeal directs Father to take the Child to school every other Friday and Monday morning following his custodial time. Father also indicates that he has a coaching position with the Child's basketball team and that he attends the games and practices, even if they do not fall during his custody time.

Additionally, Father takes issue with the court's finding in favor of Mother as to factor (11), "based on [Mother's] proximity to the minor child's school and to his athletic practice location." *See* TC Order at 4 (factor (11)).

Specifically, Father claims that the record contains no evidence to support this finding. Furthermore, Father points to the factors relating to who "is more likely to attend the daily physical, emotional, developmental, educational, and special need of the Child [(factor (10))], each [p]arty's availability to care for the Child and to make appropriate child-care arrangements [(factor (12))], and the parental duties performed by each [p]arty [(factor (3))]," as factors that should have been found in his favor or considered neutral. Father's brief at 13.

We agree with a number of Father's contentions, recognizing that the court's conclusions based on the evidence in the record are not supported by the court's findings and in some instances contradict those findings. For example, the court determined that factor (1) weighs slightly in Mother's favor, yet the evidence the court relates suggests that this factor should at a minimum be neutral. *See* TC Order at 1 (factor(1)). Also, the court's discussion regarding factors (13) and (16), which were weighed in favor of Father, shows the court's recognition of Mother's rude and combative behavior; however, the court simply concludes that it has no effect on the Child. We are also troubled by the court's emphasis, almost to the exclusion of other factors, on the Child's relationship with his half-brother. Moreover, the court appears to overlook its own ruling that it found Mother in contempt of the prior custody order. Interestingly, the court found factor (5) in favor of Mother, recognizing that she has maintained a close relationship "with her

- 15 -

grandparents and the mother of her former paramour, … [who] takes both boys out for dinner each Monday night." TC Order at 2 (factor (5)). However, the court also finds Mother lacks a relationship with her own parents and sister, who live in the vicinity.

Although we are cognizant of the emphasis on the best interests of the child standard, we are also aware that the court's conclusions must be reasonable in relation to the facts. Based upon the foregoing, we hold that some of the trial court's findings are not supported by record evidence, and that a number of its conclusions are unreasonable.

The thrust of Father's second and third issues rests on his allegation that the custody schedule imposed by the court deprived Father of in-person contact with the Child for periods of up to ten days at a time, after having had a custody schedule in place that afforded a 50% split of time with the Child. Although the court determined that these ten-day periods are minimized because daily phone contact is permitted, Father identifies testimony revealing that Mother is uncooperative and interferes with Father's attempts to communicate freely with the Child. Additionally, Father asserts that the telephone contact does not replace the lack of in-person custody time, as suggested by the court. In this same vein, Father contends that the court failed to provide a "right of first refusal," which would allow custody time for Father if Mother is unable to care for the Child during her regular custody time, *i.e.*, instead of using a babysitter or some third party. As part

of this argument, Father also claims that the court erred by not providing additional custody time during the summer months when the Child is not in school.

In Father's issues D. through F., he asserts error by the court regarding its conclusions to factors (1), (9) and (13). Specifically, in its discussion about issue D., which relates to factor(1), concerning which party is more likely to encourage and permit frequent and continuing contact between the child and the other party, the court found that "the truth is somewhere between the versions of the parties." TC Order at 1 (Factor (1)). In reviewing the evidence identified by the court and its decision to weigh this factor slightly in Mother's favor, we are compelled to conclude that this determination is unreasonable. Although the court found neither parties' testimony completely truthful, the court appears to again overlook the fact that it held Mother in contempt of the prior custody order.

Likewise, we are troubled by the court's conclusion that factor (9) is neutral in light of the fact that it directed that Mother's mental health evaluation should include a determination as to whether she needs anger management counseling because of the confrontations Mother has had with Father and others, which at times occurred in the Child's presence. TC

Order at 10 (Item 17).[4]  The court's discussion relating to this factor appears to highlight Father's shortcomings, *i.e.*, the need for Father to become more actively involved despite his busy professional life.  Yet, the court emphasizes Mother's ability to take the Child to school, his athletic practices, and keep a routine schedule apparently because she works from home.  Again, we conclude that the court's conclusion is unreasonable.

Father's issue F relates to factor (13), which the court weighed in Father's favor.  Father contends that despite the court's recognition of Mother's rude and abusive behavior towards him and others in the Child's presence, the court concluded that "[s]he has also formed a close bond with the minor child which remains unshaken even after all the obnoxious conduct to which she may have exposed her son."  TC Order at 4 (Factor (13)).  However, Father also points out  that the court found that Mother's "rudeness and intimidating personality, including cursing and uttering derogatory comments about [Father] in the presence of the minor child … seems to have made little impact on the child."  TC order at 3 (factor (8)).  Therefore, Father contends Mother's behavior, in addition to her being held in contempt, unquestionably causes conflict between the parties, and that this factor should have been weighed *heavily* in Father's favor.

_____

[4] In the order presently on appeal, both parties were directed to undergo mental health evaluations.  Only Mother's evaluation was to include the possibility of counseling.

Although we do not conclude that the court's weighing factor (13) in Father's favor as unreasonable, we do recognize that many of the weight determinations regarding some of the factors, as noted above, are unreasonable. Moreover, one of the most troubling facets of this case is the court's conclusion that Mother should be awarded primary physical custody, despite its recognition of her anger issues. Also, this ruling reduces Father's custody time exponentially from what it was under the prior order and is unreasonable under the circumstances of this case.

Father's last issue concerns the court's denial of his Motion in Limine to Preclude Testimony of the Minor Child. Father claims that his request was based on Mother's influence on the Child over the years "that poisoned the Child's mind against Father…." Father's brief at 24. Moreover, Father contends that little weight should have been given to the Child's testimony specifically relating to his desire to spend more time at Mother's home so that he could engage in more activities with his half-brother. We conclude that the court's denial of Father's motion was not an error. ***See McMillen v. McMillen***, 602 A.2d 845, 847 (Pa. 1992) (stating "[a]lthough the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest"). However, the court's emphasis on the Child's relationship with his half-brother appears to override most other factors and, therefore, must be considered unreasonable.

Based upon our review of this matter, we conclude that because the court's determinations as to a number of the individual factors are unreasonable, its custody order cannot remain in place. Accordingly, we vacate the custody order on appeal and direct that upon remand the prior order of shared physical custody be re-imposed, thus, allowing for the 50-50 split of custody time. **See M.A.T. v. G.S.T.**, 989 A.2d 11, 21 (Pa. Super. 2010) (en banc) (stating that, where the record is sufficiently developed, we may substitute our judgment for that of the trial court and decide the case on the merits). Furthermore, we direct that upon remand the trial court is to consider Father's request to modify the re-imposed custody order to allow any responsible adult to retrieve or accept custody of the Child on behalf of Father for his periods of custody. **See** Father's Petition for Contempt and Modification of Custody Order, 6/21/16, at 5 ¶ 16. That portion of the order finding Mother in contempt is affirmed.

Order vacated in part and affirmed in part. Case remanded for the re-entry of the prior custody order and to consider requested modification. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/18/2017</u>