J-A02036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| L.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.B. | : | |
| | : | |
| Appellant | : | No. 1195 MDA 2018 |

Appeal from the Order Entered June 22, 2018
In the Court of Common Pleas of Berks County Civil Division at No(s):
16 16386

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 14, 2019**

B.B. (Mother) files this appeal from the order[1] awarding her and L.F.

(Father) shared physical and legal custody of their minor daughter, P.F., born

in May 2014 (Child).  We affirm.

The trial court summarized the relevant procedural and factual history

as follows:

> This case formally began when Father filed a custody complaint
> on August 15, 2016.  Following proceedings before a custody
> master and conference with the [c]ourt, the matter was initially
> scheduled for trial on October 4, 2017, then continued to
> November 20, 2017.  As requested by the [c]ourt, the parties filed

---

[1] The subject order was dated June 21, 2018.  However, the clerk did not
provide notice pursuant to Pa.R.C.P. 236(b) until June 22, 2018.  Our appellate
rules designate the date of entry of an order as "the day on which the clerk
makes the notation in the docket that notice of entry of the order has been
given as required by Pa.R.C.P. 236(b)."  Pa.R.A.P. 108(b).  Further, our
Supreme Court has held that "an order is not appealable until it is entered on
the docket with the required notation that appropriate notice has been given."
***Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999).

proposed findings of fact and conclusions of law just before that trial date. However, the trial was not held in November, with the parties desiring entry of a temporary custody order, which the [c]ourt then issued on February 2, 2018. Trial was eventually held June 19, 2018. [At the custody trial, Mother and Father were represented by counsel and testified on their own behalf. In addition, Father presented the testimony of a licensed clinical social worker, Rana Dimmig, who previously counseled Father and Mother,[2] and his present wife, B.F. Mother presented the testimony of her mother, the child's maternal grandmother, P.D.]

* * *

The facts, in brief, are as follows: [Father] and [Mother] are the parents of [Child]. Father moved to Ohio prior to [C]hild's birth, and he resides there now, approximately seven hours by car from Mother's apartment in Boyertown. Father works in heating and air conditioning, owns his home, and is now married and has another child who is one year old.

Beginning at the end of 2016, the parties operated under a temporary order that called for them to engage in co-parent counseling and for Father to travel to Mother's home for visits with [C]hild every other weekend, supervised by Mother and often by her mother (that is, the [C]hild's maternal grandmother) as well. In March 2017, a second temporary order allowed Father to take [C]hild on unsupervised visits away from Mother's home but staying in the area. A third temporary order in July 2017 allowed for overnight visitation.[3]

The parties had several co-parent counseling sessions with Rana Dimmig, a social worker well known to and respected by the [c]ourt. Ms. Dimmig testified that the sessions were very contentious, with Mother yelling at Father as well as at her. Ms.

---

[2] Dimmig conceded that she had not met Child and had not counseled or spoken with the parties in a year before the hearing. N.T., 6/19/18, at 20.

[3] The temporary custody orders were dated January 27, 2017, and entered January 31, 2017, and May 5, 2017, and entered May 9, 2017. A third proposed order was issued July 27, 2017, to which Father filed exceptions on August 1, 2017.

Dimmig indicated that Mother had great difficulty letting go of anger at Father and focusing on the future. . . .

The temporary order entered in February 2018 provided for Father to have the child with him in Ohio every other weekend, exchanging custody at the Milesburg exit along I-80, a rough midpoint of the route between the parties' homes, at 8:00 p.m. Friday and then at 6:00 p.m. Sunday.[4] The exchange on Friday evening never took place on time because the drive was longer than Mother had expected and she could not leave work early. There were also numerous issues with communication between the parties and also with arranging communication between the child and whichever parent did not have physical custody at a given time.

Trial Ct. Op., 9/4/18, at 1-3.

On June 22, 2018, the court entered the order awarding the parties shared legal and physical custody of Child. Specifically, the court ordered that the parties alternate physical custody every two weeks with an exchange every other Sunday at 3:00 p.m. at the Rest Area at mile 146 on I-80 in Centre County, Pennsylvania. The court's order also provided for a holiday schedule as well as "unfettered" daily contact with the non-custodial parent via Skype, ooVoo, or another agreed-upon messaging and video application.

The trial court further analyzed and addressed each statutory custody factor pursuant to 23 Pa.C.S. § 5328(a) and Child's best interests as follows:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the children and another party?

This factor clearly favors Father. Father has shown he is more likely to encourage and permit frequent and continuing contact between the minor child and Mother. Mother has presented

---

[4] This order, dated February 2, 2018, and entered February 5, 2018, was agreed to by the parties. Temporary Custody Order, 2/5/18; **see also** N.T., 11/20/17.

- 3 -

significant barriers to Father in terms of him establishing a relationship with the child whereas Father always ensures that the child has contact with Mother while in his care.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the children or an abused party and which party can better provide adequate physical safeguards and supervision of the children.

This factor favors neither party. There is no abuse between the parties. Mother claims that Father "verbally abuses" her. Father denies that. Both parties need to do a better job of communicating.[5]

(3) The parental duties performed by each party on behalf of the child.

This factor favors Mother. Mother has performed the majority of the parental duties thus far in the child's life. The [c]ourt is satisfied that Father, given increased visitation with the child, will meet the child's needs.

(4) The need for stability and continuity in the child's education, family life and community life.

This factor favors Father. Allowing the child to spend two weeks at a time with each parent will afford her continuity until such time as this [c]ourt decides where she will primarily reside when she begins school. Father also presents with a more stable home life as he is married, he and his wife have a child together, and Father owns his home.

(5) The availability of extended family.

This factor favors neither party as Father's family resides in Ohio whereas Mother's family resides in Pennsylvania.

(6) The children's sibling relationships.

This factor favors Father as the child has a sibling living in Father's home whereas Mother has no other children.

---

[5] The trial court did not separately address Section 5328(a)(2.1). However, there was no evidence presented during the custody hearing that related to this factor.

Testimony established the minor's relationship with her sibling is going very well.

(7) The well-reasoned preference of the children, based on the children's maturity and judgment.

This factor favors neither party as the child is too young and immature to express any meaningful preference as to where she wishes to reside and with whom.

(8) The attempts of a parent to turn the children against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the children from harm.

This factor clearly favors Father. Father is more likely and able to promote a relationship between the child and Mother than Mother is between the child and Father. The testimony clearly establishes that Father does not in any way put the child in the middle whereas Mother has been combative and confrontational with Father in the child's presence.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the children adequate for the children's emotional needs.

This factor clearly favors Father. Father is better able to maintain a loving, nurturing, relationship with the minor child as has been covered above.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the children.

This factor favors Father. Father is more capable of attending to the daily, physical, emotional, developmental, and educational needs of the child. The evidence established that Father is supportive of the child's relationship with her Mother and he does not engage in any behavior that would cause the child distress or anxiety.

(11) The proximity of the residences of the parties.

The parties currently live 7 hours away from one another.

(12) Each party's availability to care for the children or ability to make appropriate children-care arrangements.

This factor is not an issue. Both parties are equally available to care for the minor child.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

This factor favors Father. The level of conflict between the parties is high due to Mother's emotional volatility.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

Neither party has a history of drug or alcohol abuse.

(15) The mental and physical condition of a party or member of a party's household.

This factor favors Father. There are no concerns with the mental condition of Father though the [c]ourt has concerns about Mother's volatility, particularly in the presence of the child. The [c]ourt still hopes that co-parent counseling might help with the level of conflict in this case.

(16) Any other relevant factor.

N/A.

Decision and Order, 6/22/18, at 5-8.

The trial court denied Mother's oral motion for a stay on June 29, 2018.[6] The court subsequently denied Mother's emergency motion for reconsideration on July 12, 2018.

On July 17, 2018, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, the trial court issued a responsive opinion.

---

[6] Judge Timothy J. Rowley presided over this matter. However, the order denying Mother's emergency motion for reconsideration was entered by Senior Judge Scott D. Keller.

- 6 -

On appeal, Mother raises the following issues:

[1.] Whether the honorable trial court erred when it granted the parties evenly shared physical custody in a fourteen (14) day rotating schedule, when father had seen [C]hild less than twenty (20) times during the four years of [C]hild's life, and the child had never been away from mother for more than two (2) nights.

[2.] Whether the honorable trial court erred in its June 2[2], 2018 decision and order when its facts established and factors to consider when awarding custody did not reflect the testimony and evidence presented at trial.

[3.] Whether the honorable trial court erred in its decision and order when it required the parties to perform custody exchanges at a rest area at mile 146 on I-80 in Centre County.

Mother's Brief at 4 (full capitalization omitted).

In her first two arguments, Mother asserts that the trial court erred in establishing an alternative two-week physical custody schedule and in analyzing factors 1, 4, 9, and 10 of 23 Pa.C.S. § 5328(a).  We address Mother's arguments in greater detail below.

Our standard of review in custody cases under the Child Custody Act, 23 Pa.C.S. §§ 5321-5340, is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

- 7 -

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015).

This Court consistently has held:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5328(a) sets forth the best interest factors that the trial court must consider when ordering any form of custody. *See **E.D. v. M.P.***, 33 A.3d 73, 79-80 n.2 (Pa. Super. 2011). Specifically, Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has stated:

"**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. ***Id.***

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa. Super. 2014).

Moreover, although the trial court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is within the discretion of the trial court. ***M.J.M.*** 63 A.3d at 339. Critically, as we stated in ***M.J.M.***,

**[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. ***See A.D. v. M.A.B.,*** 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the

- 11 -

evidence, we must defer to the presiding trial judge who viewed
and assessed the witnesses first-hand.").

*Id.* (emphasis added).  Further, while a parent's role in caring for a child may

be considered in light of the statutory factors, "the primary caretaker doctrine,

insofar as it required positive emphasis on the primary caretaker's status, is

no longer viable." *Id.*

In her challenge to the alternating two-week physical custody schedule,

Mother asserts that it was unreasonable to deprive Child of contact with her

for a period of fourteen days.  Mother's Brief at 8-12.  In support, Mother

relies on *M.J.N. v. J.K.*, 169 A.3d 108 (Pa. Super. 2017).  According to

Mother, in *M.J.N.*, this Court found it unreasonable to deprive a parent, who

previously exercised equally shared physical custody, of contact for periods of

up to ten days.  Mother's Brief at 8-11.  Mother states:

> In the case at hand, Mother had sole physical custody until Father
> filed for custody years after [C]hild was born.  [C]hild has never
> been away from her Mother for more than a night until Father
> started getting some weekends, at which point the child was away
> from her [m]other for two (2) consecutive nights at a time on a
> few occasions.  The Decision and Order deprives [C]hild of seeing
> . . . Mother for periods of fourteen (14) days, or seven (7) times
> longer than she had ever been away before, and four (4) days
> longer than was found to be impermissible in [*M.J.N.*]
>
> This case should be remanded to the trial court to make an award
> of primary physical custody for Mother because like in [*M.J.N.*]
> under the circumstances of this case it is manifestly unreasonable
> to abruptly take a four year-old child from the only security and
> stable environment she has ever known, and compel her to
> suddenly split time with a man who would place his interests over
> the trauma [C]hild endures as a result of being ripped away from
> her primary care-giver.

- 12 -

*Id.* at 11-12 (citations to record omitted).

In response, the trial court emphasized the evidence that Child's custodial time with Father "goes well," even though Child is apart from Mother. Trial Ct. Op. at 5. The court further reasoned:

> Mother cites [*M.J.N.*] in relation to this assertion, but after carefully reviewing the opinion, the [c]ourt is unable to identify its relevance. First, the opinion itself is somewhat confusing, as it appears to indicate that the parties had been alternating physical custody every two weeks for more than four years before the order appealed from, [*see M.J.N*., 169 A.3d] at 110, but also indicates the father's concern that the new court-ordered schedule would deprive him of in-person contact for stretches of more than ten days, thus inhibiting his relationship with the child, [*see id.*] at 118. Possibly the father had previously been allowed in-person contact of some sort during the mother's two-week periods. Regardless, [*M.J.N.*] does not involve the issue of a child being placed with an insufficiently familiar parent, and it does not include any specific analysis of periods of separation from a party who had previously been the primary parent. Putting aside the relevance of [*M.J.N.*], or the lack thereof, the [c]ourt in this case ordered the even split and two-week rotation for the many reasons set forth in its decision. Specifically, Mother's assignment of error implies [C]hild would have a difficult time being away from her and spending longer periods with Father, but the [c]ourt credited testimony from Father and Father's wife that suggested the weekend visits have gone well and the child has become comfortable spending time with Father.

Trial Ct. Op. at 4-5.

Following our review, we discern no error in the trial court's analysis of this issue. In *M.J.N.*, this Court vacated a custody order granting a mother's request for modification of a shared custody order and awarding the mother primary custody. *See M.J.N.*, 169 A.3d at 119. The *M.J.N.* Court noted that the modification substantially reduced the father's custodial time under the

circumstances of the case. *See id.* Nevertheless, the **M.J.N.** Court did not hold that the reduction of father's time with the child was unreasonable. Instead, the Court vacated the custody order because the trial court's determinations as to several custody factors were unreasonable in light of the fact that the mother was held in contempt of prior custody and displayed rude and combative behavior to the father. *See id.* at 118. Therefore, we agree with the trial court that Mother's reliance on **M.J.N.** is misplaced.

Additionally, a licensed clinical social worker, Rana Dimmig, testified about the custody schedule ordered in the instant case. Dimmig, who conducted co-parent counseling with Mother and Father, testified that less frequent custodial exchanges would be more desirable in a situation where, as here, there was conflict between the parents. *See* N.T., 6/19/18, at 19-21, 24-25. Specifically, Dimmig noted that her sessions with Mother and Father were "chaotic."[7] In the following exchange with Father's counsel, Dimmig further explained:

> [Father's counsel]  So given—your word was "chaotic" in your sessions.
>
> [Dimmig]  Uh-huh.
>
> [Father's counsel]  When you have a young couple like this where there's chaos, would it make more sense to have frequent exchanges of the child or less frequent exchanges?

---

[7] Dimmig described the "chaos" as a lot of yelling and screaming by Mother about the past. N.T., 6/19/18, at 10-11, 26. She observed that Mother is "very focused on issues that occurred prior to [Father] being involved [with Child]." *Id.* at 11.

- 14 -

[Dimmig]  Usually less frequent.

*Id.* at 19.  In response to the following inquiry by the trial court, Dimmig clarified:

> THE COURT:  So I'm interpreting what you're saying is that, at a minimum, anything more than a week on or less than week on, week off, would be an awful lot of frequent interaction --
>
> [Dimmig]:  Correct.
>
> THE COURT:  —and contact between the parties and the child, which you wouldn't recommend?
>
> [Dimmig]:  No.
>
> THE COURT:  Okay.  So you might even recommend two weeks on and two weeks off.
>
> [Dimmig]:  Something that would minimize any of the interaction they had.
>
> THE COURT:  I just want to make sure.  That's the conclusion I had.  I just want to make sure I heard it right.
>
> [Dimmig]:  Uh-huh.

*Id.* at 21.

Accordingly, there was support for the trial court's decision to establish an alternating two-week physical custody schedule based on the relationship between Mother and Father.  Therefore, we discern no abuse of discretion in the court's conclusion that such a schedule was in Child's best interest in light of the contentious relationship between Mother and Father.

Next, Mother maintains that the facts established and recitation of factors did not reflect the testimony and evidence presented at trial.  Mother's Brief at 12-22.  Mother states, "[M]any of the court's conclusions lacked any

supporting evidence or were in direct conflict with the evidence actually presented at trial." *Id.* at 13. Specifically, Mother claims the trial court erred in concluding that factors 1, 4, 9, and 10 favored Father, when the evidence suggested they fell in her favor. *Id.* at 13-22.

By way of further background to this claim, the trial court explained its determinations of factors 1, 4, 9, and 10 as follows:

> [As to factor 1[8]], the [c]ourt concluded from the evidence at trial that despite accusations from both sides that the other has, for instance, interfered with the timing of phone calls, Mother's evident antipathy towards Father makes her likely to be more of a hindrance to communication. Further, while the [c]ourt found this factor favors Father, it also gave this factor relatively little weight in light of Ms. Dimmig's testimony that the phone calls, despite being such a point of contention, are of relatively little importance to [C]hild. And beyond the issue of phone calls, Mother is obviously opposed to increasing Father's proportion of physical custody/in-person time with the child, whereas Father is happy to have [C]hild as much as he can but does not begrudge Mother having equal time.
>
> [As to factor 4,[9] w]hile the [c]ourt found that overall this factor favors Father, it explicitly stated (as was also made clear on the record at trial) that continuity in education is an issue for the future, and in fact one that will almost certainly upend the entire arrangement laid out in the current custody order. [C]hild in the case Mother cites was already enrolled in a particular school district and on an individualized plan for autism, which was a major consideration in both the trial and appellate courts' conclusions that the stability factor favored the parent with whom [C]hild was already living. Here, [C]hild is not yet in formal

---

[8] *See* 23 Pa.C.S. § 5328(a)(1) ("Which party is more likely to encourage and permit frequent and continuing contact between the child and another party").

[9] *See* 23 Pa.C.S. § 5328(a)(4) ("The need for stability and continuity in the child's education, family life and community life.").

schooling other than daycare/preschool and, frankly, is of an age at which her interaction with the community is relatively limited. Both households are relatively stable, and there is extended family in both locations, but Father does own his home and have a wife and another child. The [c]ourt concluded that two-week intervals would provide sufficient continuity at this point in [C]hild's life and, in fact, such intervals probably provide greater stability than the intense, short-turnaround exchanges that had been occurring prior to trial, during which [C]hild spent a day and a half with [Father] every other weekend, and fourteen hours in the car over the course of two days each time as well.

[As to factor 9,[10] t]his point again turns at least in part on Mother's focus on the past, as she laments Father's extremely limited relationship with [C]hild and the fact that it "has just begun years into [C]hild's life." To the extent that the past is indeed relevant, Father did testify that he made efforts to become more involved earlier, and of course it was Father that ultimately filed this custody suit when those efforts were rebuffed. The [c]ourt is very concerned, as Ms. Dimmig testified, that in order to most effectively and consistently support [C]hild's emotional needs, Mother must work through her negativity and anger related to Father and their past. The [c]ourt has no doubt that both parents love the child, and certainly Mother has had the most thorough relationship with her so far. The [c]ourt concluded, however, that Father presents a more straightforward and loving approach to moving forward, focused on [C]hild without resentment.

[As to factor 10,[11] t]here is no question that Mother has been the primary parent doing this work before now. But the [c]ourt has no real concern about either parent's ability to handle the basics, and other than some allergies that do not seem to be creating any major problems, [C]hild really appears to be doing well and has no issues with which either parent would have trouble. Given that, the [c]ourt's main concern for [C]hild's emotional development at

---

[10] **See** 23 Pa.C.S. § 5328(a)(9) ("Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.").

[11] **See** 23 Pa.C.S. § 5328(a)(10) ("Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.").

this time is the custody issue itself: [C]hild would be well served by developing more of a relationship with both parents, and as the [c]ourt has repeatedly explained, Father is more supportive of that endeavor.

Trial Ct. Op. at 6-10.

With regard to factor 1, Mother contends that she reached out to Father and his family after Child's birth. *Id.* at 14. Further, Mother maintains that she has allowed and assisted with phone contact, but Father has refused to allow Mother phone contact before Child goes to sleep. *Id.* 14-15. Likewise, Mother indicates that she has reached out to Father on several occasions when he went a length of time without visitation and/or contact with Child. *Id.* at 15. Mother suggests, "[t]he testimony and evidence presented at trial demonstrates that Mother has been more likely to permit and encourage frequent and continuing communication between the child and another party, and that she will continue to do so. This factor should favor Mother." *Id.* at 15-16.

As to factor 4, Mother contends that she provides stability and continuity, particularly since Child has always resided with her. Mother's Brief at 16-17. Mother argues:

> In the instant case, the [c]ourt's evaluation of this factor does not afford appropriate weight to the evidence presented at trial. The evidence presented shows that Mother has always provided a stable environment for the child, and no evidence or allegations were presented to suggest that the child's life has not been stable with Mother. All of the child's friends reside in Berks County, as well as her doctors, specialists, and dentists. The child has attended the YMCA since she was five months old, beginning with day care and evolving into pre-school. On the other hand, Father was absent for the first three years of the child's life.

- 18 -

The [c]ourt's evaluation of this factor seems to rely on Father being married, having a child with his wife, and owning his own home. However, that reliance belays [sic] the fact that Father has moved multiple times without informing Mother where he was moving to, and Mother has not moved since the child was born. Moreover, had Mother not raised the child by herself for the first 3 years of the child's life, she too could likely have had the opportunity to become remarried, have another child, and purchase a home.

These facts demonstrate that Mother has been better able to provide for stability and continuity in the child's education, family life, and community life, and will continue to be better in the future. This factor should heavily weigh in Mother's favor.

*Id.* at 17-18 (citations to record and appendix omitted).

As to factor 9, Mother argues, the trial court's conclusion

contradicts all evidence that was presented. Mother has been the sole caregiver to [C]hild for the vast majority of [C]hild's life. Father has seen [C]hild less than twenty (20) times throughout [C]hild's four years of life. Mother testified extensively and knowledgably about [C]hild's doctor, dentist, and specialists. The testimony reflected that Mother prioritizes [C]hild, cooks for her, cleans for her, takes her to the park and library, takes her on vacations, reads with her, and consistently spends quality time with her. There was no testimony whatsoever to suggest that Mother's relationship with [C]hild was anything but loving, stable, consistent and nurturing. Indeed, the [trial] court explicitly states in summation, "[t]here's no question Mother [loves the child].["]

On the flip side, the testimony presented showed that Father wanted to abort [C]hild, waited years to become involved even after Mother reached out to him numerous times asking him to become involved, has never taken [C]hild to the doctor, specialist or dentist, and consistently misses visits with [C]hild.

\* \* \*

Because the evidence presented shows that Mother has been able to maintain a loving, stable, consistent, and nurturing relationship with the children [sic] adequate for the children's [sic] emotional needs and there is no evidence suggesting that she will not be

able to maintain that relationship in the future, this factor should favor Mother.

*Id.* at 18-20 (citations to record omitted)).

Finally, with regard to factor 10, Mother maintains that she can best provide for Child's daily physical, emotional, developmental, and educational needs. *Id.* at 21-22. Mother submits:

The [c]ourt's evaluation of this factor is in error. The testimony reflects that Mother has been doing an exceptional job of attending to the daily, physical, emotional, developmental, and educational needs of [C]hild. Mother has sought and attained employment allowing her to spend time with [C]hild and ensure she is available to attend to [C]hild's needs. Mother has fed and clothed [C]hild her entire life. Mother has established a strong bond with [C]hild and testified that she can communicate effectively with [C]hild. Mother testified that she has enrolled the child in pre-school and that she regularly reads with the child and engages in other educational activity. Mother has been solely responsible for taking care of all of [C]hild's healthcare and medical needs.

In contrast, there is little evidence to suggest that Father can care for [C]hild's daily, physical, emotional, developmental, and educational needs. Father has just recently become involved in [C]hild's life and has missed a substantial amount of visitation to which he was entitled, none of which was Mother's fault according to Father's testimony. Father has not agreed to [C]hild receiving any type of therapy to deal with his introduction into her life. Father has denied that [C]hild suffers from medically documented allergies. Father seeks to take [C]hild out of her current preschool showing an absolute disregard for [C]hild's educational needs. Accordingly, this factor should weigh heavily in favor of Mother.

*Id.* (citations to record omitted).

At their core, Mother's arguments as to factor 1, 4, 9, and 10 dispute the trial court's findings of fact and determinations regarding credibility and weight of the evidence. In essence, Mother asks this Court to re-find facts,

- 20 -

re-weigh evidence, or re-assess credibility in a light most favorable to her evidence. This we cannot do. Under our standard of review, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. As we stated in *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005), "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." *Id.* (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)).

Having reviewed the trial court's order and opinion, Mother's arguments, and the record, we conclude that the trial court's findings regarding the custody factors set forth in Section 5328(a) are supported by competent evidence. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. Moreover, we discern no error of law in the trial court's legal determinations. Accordingly, Mother's arguments as to factors 1, 4, 9, and 10 warrant no relief.

Lastly, Mother contends that it was unreasonable to make her drive more than half of the distance for custodial exchanges. Mother's Brief at 23-24. She further indicates that the location selected was improper because it required the parties to drive an additional twelve miles. *Id.* at 23-24. Specifically, Mother asserts:

In requiring the parties to meet for custody exchanges in a location closer to Father, that requires either party to drive an additional 12 miles just to turnaround after having conferenced with the parties to determine an appropriate location to meet, it appears that the court arbitrarily chose this location, or in the alternative, considered that Father had done the majority of the driving since abandoning [C]hild and decided that now it was Mother's turn to do more of the driving. The [c]ourt's decision cannot be sustained on either of these grounds, and this court should accordingly remand this case to the trial court to enter an order wherein Mother is not required to drive more than Father.

*Id.* at 24.

As an initial matter, we note that as set forth in her Pa.R.A.P. 1925(b) statement, Mother challenged the selected custodial exchange location based on safety considerations and the fact that Father moved to Ohio prior to Child's birth and was uninvolved in Child's life. Specifically, Mother stated:

3. The [trial court] erred in its Decision and Order when it required the parties to perform custody exchanges at the Rest Area at Mile 146 on I-80 in Centre County Pennsylvania, when the [trial] court had a conference with the parties regarding a meeting location whereby it was decided that Exit 158 on 1-80 in Milesburg was the appropriate meeting location, because the Rest Area at Mile 146 on I-80 did not incorporate any of the safety features that the court had already deemed appropriate; and the Rest Area at Mile 146 on 1-80 was the midway point between Father's old address . . . and Mother's residence, rather than Father's current address . . . .

4. The [trial court] erred when it required Mother to drive more than three and a half (3.5) hours each way for custody exchanges when Father had moved from Pennsylvania to Ohio when Mother was eight (8) months pregnant, and only became involved in [C]hild's life two and a half (2.5) years later.

*See* Mother's Concise Statement of Errors Complained of on Appeal, 7/17/18, at ¶¶ 3, 4.

On appeal, however, Mother has abandoned the safety issue raised in her Pa.R.A.P. 1925(b) statement. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); Mother's Brief at 23-24. Instead, Mother's argument in her brief focuses on the additional distance needed to travel to the transfer point. As such, the issue raised by Mother in her brief could be deemed waived.[12] *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them in both the Rule 1925(b) statement and the statement of questions involved portion of the brief on appeal results in a waiver of those issues).

In any event, the trial court discussed its selection of the exchange location and addressed Mother's argument as follows:

> These points demonstrate Mother's continued focus on fairness to her and on Father's past conduct rather than on the practical realities of [C]hild's interests in the present [case]. Frankly, a shift of twelve miles along the interstate is a *de minimis* issue, and the [c]ourt simply exercised its discretion in choosing a fair midpoint given that both parties are inevitably going to have a long drive.

Trial Ct. Op. at 6.

_____

[12] In any event, our review reveals no abuse of discretion in the trial court's selection of a transfer point that required Mother to travel an additional twelve miles.

- 23 -

Instantly, at the hearing, Mother objected to any exchange point that required her to travel, *see* N.T., 6/19/18, at 161, or insisted that an exchange take place at a police station, *see also* N.T., 11/20/17, at 7. In her emergency motion for reconsideration, Mother similarly challenged the location as being closer to Father and his new address. Mot. for Reconsider., 6/29/18, at 5-6. Mother, in her brief, continues to assert that the additional traveling distance on her was unfair or arbitrary. However, Mother has failed to identify any basis to conclude that the twelve-mile shift in the exchange location constituted an abuse of discretion. Therefore, we have no basis to disturb the trial court's determination of the location for custody exchanges.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/14/2019