J-A02027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.P. AND D.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.C. AND C.P. | : | |
| | : | |
| | : | No. 1277 WDA 2019 |
| APPEAL OF: S.C. | : | |

Appeal from the Order Entered July 18, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  FD-17-4317-003

BEFORE:  SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                     **FILED FEBRUARY 19, 2020**

Appellant, S.C. ("Mother"), appeals *pro se* from the July 18, 2019 order granting C.P. ("Paternal Grandfather") and D.P. ("Paternal Grandmother") (collectively, "Paternal Grandparents") sole physical and legal custody of C.C. ("Child").[1]  We affirm.

The trial court set forth the relevant factual and procedural background of this matter as follows.

> Th[is] case originally came to the attention of the [trial] court when the Office of Children Youth and Families [("OCYF")] filed a dependency petition in January [] 2018.  The petition alleged that [Child] was without proper parental care or control.  It was alleged that Mother brought [Child] to a court hearing on January 19[,] 2018 and was incarcerated that day.  [Child] [was] placed in the courthouse's daycare, and an appropriate family member could

_____

[1] Child was born in November 2016.

not be located to retrieve [her]. While the Dependency Petition Hearing was pending, OCYF contacted [("Father")], and [Child] was placed in his care.[2] Ultimately, the dependency petition was withdrawn, and Father was granted primary custody of [Child], as he appeared to be a ready, willing, and able parent.

The court did not have contact with the family again until May [] 2018, at which time Mother sought custody of [Child] after her release from incarceration. [When Mother filed the custody complaint,] [she] served Father only and did not include Paternal Grandparents as [parties] to the custody action. Mother and Father were ordered to participate in the Generations Program. Father retained primary custody of [Child] until July 28, 2018, at which time he was incarcerated. Prior to his incarceration, Father made arrangements with Paternal Grandparents to care for [Child]. However, it was apparent from the court's interactions with the family that Paternal Grandparents provided daily care for [Child] from the time she was placed in Father's care in January [] 2018. Paternal Grandparents also reported that they cared for [Child] for extended periods of time prior to Mother's incarceration in January [] 2018.

Mother failed to appear for the Generations educational seminar on July 14, 2018, and her petition for modification was dismissed on July 16[,] 2018. Mother filed a petition for reinstatement of her custody action and the court granted her request on September 12[,] 2018. On September 13[,] 2018, Paternal Grandparents filed a petition for special relief custody.[3] Paternal Grandparents were granted standing and permitted to proceed in

_____

[2] Father lived in the house of Paternal Grandparents.

[3] On January 29, 2020, Mother filed an Application for Relief with this Court in which she asserts that she was never served with Paternal Grandparents' petition for custody and she saw it for the first time on January 29, 2020 when she found it on the court's electronic docket. Appellant's Application for Relief, 1/29/2020, at 2. A review of the record belies Mother's assertions. Not only has she been actively involved in these proceedings from the beginning — including participating in the custody trial, filing a notice of appeal from the trial court's order granting sole legal and physical custody to Paternal Grandparents, filing a brief and appearing for oral argument before this Court — but Mother also signed an acknowledgment of service of the custody pleading which was filed with the trial court on October 17, 2018. Accordingly, Mother's Application for Relief is denied.

- 2 -

the custody action. In September [] 2018, the court ordered all parties to proceed through the Generations Program. Pending the Generations conciliation, the court entered an interim custody order allowing Mother periods of partial visitation with [Child] on the weekends. After this hearing, Mother began filing monthly motions before [the trial] court seeking additional periods of visitation. At each motion hearing, Paternal Grandparents expressed frustration with Mother's punctuality while transporting [Child] to and from visits. Th[e trial] court entered an order on October 10[,] 2018 allowing Mother a fifteen-minute grace period to pick-up or drop-off [Child]. The court granted Mother various additional periods of visitation including [Child's] birthday, Thanksgiving, and Christmas.

On February 26[,] 2019, a custody conciliation was held to address Mother's petitions for modification to primary custody and civil contempt and Paternal Grandparents' petition for modification for sole custody. Mother failed to appear, and her petitions were dismissed. Paternal Grandparents' petition was scheduled for a judicial conciliation on March 26[,] 2019. At the conciliation, Paternal Grandparents expressed concern for Mother's care of [Child] during her periods of visitation. Specifically, they alleged that Mother had returned [Child] to them with bed bug bites and other various illnesses on several occasions. Paternal Grandparents also reported that Mother did not have adequate supplies for [Child] during her periods of visitation and returned [Child] to them wearing a maxi pad. Mother reported to Paternal Grandparents that she did not have diapers. Mother's tardiness at drop-off and pick-up times continued to be an issue as well. The parties could not agree to any form of shared custody and as such, a custody trial was scheduled for June 12[,] 2019. The parties appeared on that date, and the court heard testimony and accepted exhibits from the parties. Mother did not allege any physical maltreatment of [Child] by Paternal Grandparents at this hearing. Due to a scheduling conflict, the court was only able to hear [90] minutes of testimony, and the hearing was continued to July 2[,] 2019. Pending the second day of trial, the court ordered Mother to return [Child] to Paternal Grandparents by 10[:00] [a.m.] on Sunday, June 16[,] 2019 for Father's Day. In exchange for shortening Mother's period of custody, the court granted her an extended period of visitation from June 20[,] 2019 until June 25[,] 2019 so that she could take [Child] on vacation. On or about June 15[,] 2019, Mother obtained a frivolous emergency protection from abuse order on behalf of [Child] alleging physical

maltreatment by Paternal Grandfather. Mother did not return [Child] to Paternal Grandparents as outlined in the June 12[,] 2019 order. Paternal Grandmother appeared before the court on Monday, June 17[,] 2019 to report that [Child] had not been returned to their care. Mother failed to appear in court in a timely fashion and the emergency protection from abuse order expired on June 17[,] 2019. [The trial] court entered an order on June 17[,] 2019 ordering Mother to return [Child] to the care of Paternal Grandparents immediately. The court also suspended Mother's custodial periods as set forth in the October 10[,] 2018 and June 12[,] 2019 orders. Paternal Grandmother appeared the following day on June 18[,] 2019 and sought assistance from the court in obtaining [Child] from Mother's home. On June 18[,] 2019, [the trial] court gave the Allegheny County Sheriff's Office permission to forcibly remove [Child] from Mother's care if she was discovered at Mother's home. Members of the Allegheny County Sheriff's Office arrived at Mother's home a short time after the court order was signed and Mother refused to allow the deputies into her home. The deputies had to forcefully enter Mother's residence with their weapons drawn. Mother was discovered to be hiding behind a couch with [Child]. [Child] was returned to the care of Paternal Grandparents that day.

The parties next appeared on July 2[,] 2019 and were permitted to give more testimony and provide evidence to the court. Paternal Grandparents provided documentation to the court where Mother made social media posts about smoking marijuana. Mother denied drug use. The court ordered her to be drug screened that day, and she tested positive for marijuana.

Trial Court Opinion, 10/22/19, at 2-5 (footnote in original) (superfluous capitalization omitted).

On July 18, 2019, the trial court issued an order granting Paternal Grandparents sole physical and legal custody of Child. Trial Court Order, 7/18/19, at 1. The trial court also granted Mother "partial periods of custody on the first and third weekends of the month." *Id.* Mother filed a notice of appeal on August 16, 2019, without including a concise statement. *See*

- 4 -

Pa.R.A.P. 1925(a)(2)(i). On August 19, 2019, the trial court issued an order directing Mother to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P 1925 within 21 days of its order. Trial Court Order, 8/19/19, at 1. Mother filed her Rule 1925 statement on September 13, 2019, four days beyond the court-ordered 21-day period.

Preliminarily, we address Mother's failure to comply with two provisions of Pa.R.A.P. 1925. First, Mother failed to file a concise statement of matters complained of on appeal contemporaneously with her notice of appeal as required by Pa.R.A.P. 1925(a)(2)(i). This renders Mother's notice of appeal defective. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that an appellant's failure to file a simultaneous concise statement and notice of appeal violates Pa.R.A.P. 905(a)(2) and 1925(a)(2) and, as such, is defective). **K.T.E.L.**, however, declined to adopt a *per se* rule requiring automatic quashal or dismissal of children fast track cases for such a failure. **Id.** Instead, it held that the disposition must be "decided on a case-by-case basis." **Id.** Accordingly, because Rules 905(a)(2) and 1925(a)(2) are "procedural, not jurisdictional," we decline to dismiss Mother's appeal on this basis. **Id.**

Second, Mother failed to timely comply with the trial court's August 19, 2019 order directing her to file a Rule 1925(b) statement within 21 days. This failure may "constitute[] waiver of all objections to the order, ruling, or other matter[s] complained of on appeal." **J.P. v. S.P.**, 991 A.2d 904, 908 (Pa. Super. 2010) (distinguishing the effect of failing to file a contemporaneous

- 5 -

notice of appeal and concise statement and the failure to timely comply with the trial court's order). "In a civil case," however, "Rule 1925(b) implicates the notice procedure set forth in Pa.R.C.P. 236." *J.P. v. S.P.*, 991 A.2d at 908. Thus, before we may conclude that Mother waived her claims, we must determine whether the following procedural steps were adhered to:

> (1) the court must order the Rule 1925(b) statement; (2) the order must be filed with the prothonotary; (3) upon receipt of an order from a judge, the prothonotary must immediately docket the order and record in the docket the date it was made; and (4) the prothonotary must furnish a copy of the order to each party or attorney and must record in the docket the giving of the notice.

*Id.* (citation omitted). "If any one of these procedural steps is missing, the appellant's failure to comply with Rule 1925(b) will not result in waiver of the issues raised." *Id.*

Herein, the certified docket reveals that the trial court's Rule 1925(b) order was filed with the prothonotary on August 19, 2019. That same day, the prothonotary entered the order on the docket and recorded the date it was issued. The prothonotary, however, did not record the date that it served the Rule 1925(b) order upon Mother. As such, we are disinclined to conclude that Mother waived her claims for failure to comply with Rule 1925(b). Accordingly, we will address the issues raised by Mother on appeal.

Mother raises the following issues on appeal:

> I.   [Whether the trial court erred by holding that Paternal Grandparents had standing to pursue a custody action?]

> II. [Whether the trial court abused its discretion by granting Paternal Grandparents sole physical and legal custody of Child?]

*See generally* Mother's Brief at *9-12 (Un-paginated).[4]

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012).

In Mother's first issue, she argues that Paternal Grandparents lacked standing to sue for custody. The trial court held that Paternal Grandparents

---

[4] Currently, Mother raises 13 issues on appeal. *See* Mother's Brief at *9-12 (Un-paginated). These claims, however, are different than those raised by Mother in her 1925(b) statement. *See* Mother's 1925(b) Statement of Matters Complained of on Appeal, 9/13/19, at 1-2. Moreover, in Mother's appellate brief, she only develops one issue. *See* Mother's Brief at *31 (Un-paginated). Because of these errors, we could hold that Mother waived her claims on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) ("[I]ssues not included in the [Rule 1925(b) s]tatement ... are waived."); *see also Commonwealth v. Roche*, 153 A.3d 1063, 1072 (Pa. Super. 2017) ("The failure to properly develop a claim renders an issue waived."). This Court, however, is permitted to "liberally construe materials filed by a *pro se* litigant." *Commonwealth v. Williams*, 896 A.2d 523, 534 (Pa. 2006). Accordingly, upon review of the trial court's opinion, we conclude that the trial court addressed the substance of Mother's claims and, as such, we will consider the issues we identified above.

had standing to pursue custody of Child under the doctrine of *in loco parentis*. Upon review, we agree with the trial court's conclusion.

Pursuant to 23 Pa.C.S.A. § 5324, if a person "stands *in loco parentis* to the child," he or she has standing to "file an action under this chapter for any form of physical custody or legal custody. 23 Pa.C.S.A. § 5324. In **Peters v. Costello**, 891 A.2d 705, 710 (Pa. 2005), our Supreme Court outlined the relevant principles as follows:

> The term *in loco parentis* literally means "in the place of a parent."
>
>> The phrase "*in loco parentis*" refers to a person who puts oneself [*sic*] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. … The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.

**Id**. (internal citations omitted).

Herein, the custody trial began on June 12, 2019. Prior to its commencement, the following exchange occurred.

> **[Trial court]:** Grandfather, when [Child] was placed with your son[,] who is [Father], he was residing in your home; correct?
>
> **[Paternal Grandfather]:** Yes.
>
> **[Trial court]:** When was that, approximately? What year and date?
>
> **[Paternal Grandfather]:** My son, he [has] been living with me since [Child] was born. He [has] been here [from] 2015 until [three weeks before the June 12, 2019 hearing].

***

**[Trial court]:** [When Father was living with you] was he working or contributing to the household bills or any expenses related to the care of [Child]?

**[Paternal Grandfather]:** No.

**[Trial court]:** D[id] you have an agreement or an understanding about who was going to be providing primary care for [Child]?

**[Paternal Grandfather]:** [Father] was supposed to, but it always fell back on me and my wife.

**[Trial court]:** Even though you did [not] have an actual agreement, you and your wife were pretty much the primary caretakers?

**[Paternal Grandfather]:** Yes.

**[Trial court]:** What was [Father's] involvement?

**[Paternal Grandfather]:** Little.

**[Trial court]:** Tell me what you and your wife were actually doing for the care of [Child] versus what [Father] was doing.

[**Paternal Grandfather]:** Me and my wife, we pay for her day care five days a week. [We] pitch in and get [Child's] hair done every two weeks.

**[Paternal Grandmother]:** Clothes.

**[Paternal Grandfather]:** Clothes. She [will] get clothes one week or I [will] get clothes on my pay day week. We just make sure she [is] kept nice.

**[Trial court]:** And you bought all the food?

**[Paternal Grandfather]:** We bought food. I took her back and forth to get her shots, dental, anything that had to do with -- she [has] been fighting bed bugs at [Mother's] house. I got paperwork showing that she had pink eye on several occasions from [Mother's] house and I took her -- me and my wife took her to the doctors or the emergency room.

**[Trial court]:** So [Father] did [not] provide much care at all?

**[Paternal Grandfather]:** No.

**[Trial court]:** How about [Mother]?

**[Paternal Grandfather]:** None. We have [not] gotten anything from her. We never asked her for anything. Even if we were to ask, we probably would [not] have got it, because she can[not] even get [Child] home on the day she [is] supposed to bring her back to us. So I [am] picking [Child] up because she could [not] even drop [Child] off.

**[Trial court]:** So [Mother] was [not] involved in taking [Child] for her medical appointments or getting her hair done or buying her clothes or anything like that?

**[Paternal Grandfather]:** Nothing like that.

N.T. Custody Trial, 6/12/19, at 4-6. Based upon this exchange, the trial court concluded that the Paternal Grandparents stood *in loco parentis* to Child. **Id.** at 7. Upon review, we agree with the trial court's determination. Paternal Grandfather's testimony established that they continuously cared for Child's needs and discharged all parental duties since Mother's incarceration in January 2018, and Father's subsequent incarceration in July 2018. Accordingly, Mother's claim that Paternal Grandparents lack standing is meritless.

Next, Mother claims that the trial court erred in granting Paternal Grandparents sole physical and legal custody of Child. We disagree.

"The paramount concern in child custody cases is the best interests of the child." **C.G. v. J.H.**, 193 A.3d 891, 909 (Pa. 2018). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." **M.J.N. v. J.K.**, 169 A.3d 108, 112 (Pa. Super. 2017).

- 10 -

"The specific factors that a court must consider are listed in 23 Pa.C.S.A.
§ 5328(a)(1)-(16).[5] *Id.* at 112.

_____

[5] The factors listed in 23 Pa. C.S. § 5328(a)(1)-(16) are as follows.

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
>
> (11) The proximity of the residences of the parties.

Further:

The parent has a prima facie right to custody, "which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party." **V.B. v. J.E.B.**, 55 A.3d 1193, 1199 (Pa. Super. 2012), *quoting* **Charles v. Stehlik**, 744 A.2d 1255, 1258 (Pa. 2000). Section 5327 of the Custody Act pertains to cases "concerning primary physical custody" and provides that, "[i]n any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S. § 5327(b). This Court has defined clear and convincing evidence "as presenting evidence that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." **M.J.S. v. B.B. v. B.B.**, 172 A.3d 651, 660 (Pa. Super. 2017) (citations and internal quotation marks omitted).

Accordingly, "even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the biological parents' side." **V.B.**, 55 A.3d at 1199, *quoting* **Charles**, 744 A.2d at 1258. When making a decision to award primary physical custody to a nonparent, the trial court must "hear all evidence relevant to the

_____

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

**Id.**

child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." ***Id.***, *quoting* ***McDonel v. Sohn***, 762 A.2d 1101, 1107 (Pa. Super. 2000).

***R.L. v. M.A.***, 209 A.3d 391, 395-396 (Pa. Super. 2019).

In its July 18, 2019 order and opinion, the trial court discussed each of the Section 5328(a) factors as follows.

I. **Which party is more likely to encourage and permit frequent and continuing contact between the child and another party?** The [Paternal Grandparents] have continued to make concessions for [Child] to attend her custodial periods with [Mother]. In addition, Father often stays in the home of [Paternal Grandparents] and they do not restrict contact within their home. Mother has exhibited an unwillingness to foster the relationship between [Child] and [Paternal] Grandparents by filing false protection orders against them alleging physical abuse.

II. **Is there, or has there been in the past, abuse committed by a party or a member of the party's household?** This is not a factor as it relates to Mother or [Paternal Grandparents]. Although it should be noted that Mother was often exercising her custodial periods at Maternal Grandfather's home. Maternal Grandfather had previously been investigated by OCYF for using harsh physical discipline on [Child's] siblings. During the pendency of the custody trial, Maternal Grandfather [was] arrested and charged criminally for using extreme physical discipline on [Child's] older brother.

III. **What are the paternal duties performed by each party on behalf of the child?** [Paternal Grandparents] provide for all [Child's] daily needs. They have enrolled [Child] in daycare and ensure that all of her medical needs are met. They provide clothing, food[,] and shelter, and act in a paternal capacity on a day[-]to[-]day basis. Neither Mother nor Father attend medical appointments or provide daily care for [Child]. Mother does not know the name of [Child's] pediatrician. Mother does provide shelter and food for the periods she exercises custody[,] but does not transport [Child] to daycare or any medical appointments.

IV. **Which party can best provide for stability and continuity in the child's education, family life and community life?** [Paternal] Grandparents [act] as constant support for [Child]. Both are invested in [Child's] life and have demonstrated an ability to provide stability in all aspects of [Child's] life. [Child] is only in daycare[,] so education is not a factor. Mother's prior incarceration as well as her marijuana use brings into question her stability to provide long term care for [Child].

V. **The availability of the extended family.** [Paternal Grandparents] have allowed [Child] to [] contact [] extended family[,] noting that she often plays with cousins and other young relatives. Mother reports that [Child] is in contact with her siblings and maternal relatives.

VI. **The child's sibling relationships**. [Paternal Grandparents] do not interfere[] with Mother's custodial periods. Mother reports that her two other children see [Child] during [Mother's] custodial periods.

VII. **The well-reasoned preference of the child based on the child's maturity and judgment.** The child is two and [one] half years old. This is not a factor.

VIII. **The attempts of a parent to turn the child against the other**. This is not a factor. Although it should be noted that Mother falsely accused [Paternal] Grandfather of physical abuse. This factor will be a future concern.

IX. **Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs?** [Paternal Grandparents].

X. **Which party is more likely to attend to the daily physical, emotional, and educational development, and special needs of the child?** [Paternal Grandparents].

XI. **The proximity of the residences of the parties.** The parties [] live a significant distance from [each other]. Mother reports to having to take multiple buses to transport [Child] to and from [Paternal Grandparents'] home.

XII. **Each party's availability to care for the child or ability of the parties to cooperate with one another.** [Paternal Grandparents] have arranged their work schedules to ensure that [Child] is in daycare a few days a week. [Paternal Grandparents] are able to coordinate between themselves to ensure [Child] is on a daily routine and all her needs are being met. Mother claims that she is employed but that is relatively new for her. [Mother] is available on a day[-]to[-]day basis to care for [Child]. Communication is difficult for both parties. [Paternal Grandparents] tend to be slightly more cooperative than Mother in this regard.

XIII. **The level of conflict and the willingness and ability of the parties to cooperate with one another.** Mother can be vindictive at times and has created unnecessary conflict with [Paternal Grandparents]. Mother's frustration with Father has caused her to target [Paternal Grandparents] on many occasions. [Paternal Grandparents] have grown increasingly frustrated with Mother which has also caused friction in the relationship. However, [the trial court] believes that with a little patience, [Paternal Grandparents] can successfully communicate with Mother.

XIV. **The history of drug or alcohol abuse of a party or a member of the party's household.** Mother has a history of [m]arijuana use. Father has a history of drug-related arrests and also a history of marijuana use.

XV. **The mental and physical condition of a party or a member of a party's household.** This is not a factor.

XVI. **Any other relevant factors.** None.

Trial Court Order and Opinion, 7/18/19, at *4-8 (Un-paginated). Based upon its assessment of the aforementioned factors, the trial court determined that Paternal Grandparents, by the presentation of clear and convincing evidence, rebutted the presumption that Mother should be awarded custody. *See* 23 Pa.C.S.A. § 5327(b); *see also* Trial Court Opinion, 10/22/19, at 9. Herein, we discern no abuse of discretion, as the evidence presented supports the trial

court's custody award to Paternal Grandparents. We therefore affirm the trial court's July 18, 2019 order granting Parental Grandparents sole legal and physical custody.[6]

Order affirmed. Appellant's application for relief is denied.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2020

_____

[6] In its July 18, 2019 order, the trial court also granted Mother "partial periods of custody on the first and third weekends of the month." Trial Court Order, 7/18/19, at 1. At oral argument, we inquired as to whether Mother was exercising her custodial rights. Mother indicted that she was not. As stated during oral argument, we encourage Mother to comply with the trial court's order.