J-S35017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ASHLEY KRASLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVON KRASLEY | : | No. 798 MDA 2023 |

Appeal from the Order Entered May 16, 2023
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-21-08183

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                 **FILED NOVEMBER 02, 2023**

A.K. ("Mother") appeals from the order granting the petition for special relief filed by D.K. ("Father") and ordering that T.H.K. ("Child") shall attend kindergarten at Hinkletown Mennonite School ("Hinkletown"). We affirm.

Mother filed a Complaint in Custody in November 2021. The court granted the parties shared legal custody of their two children, with Mother having primary physical custody and Father having partial physical custody. Father filed the subject petition for special relief in March 2023, requesting, among other things, that the court issue an order as to where Child would attend kindergarten the following school year. The court held a hearing on the petition.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Father argued Child should attend the full-day kindergarten program at Hinkletown, which is where Child attended preschool. Mother argued Child should instead attend the half-day kindergarten program at Highland Elementary School ("Highland") in the Ephrata School District. Child's sister would be attending fourth grade at Highland that year.

At the hearing, Father's father, Douglas J. Krasley ("Paternal Grandfather"), testified that in his opinion it was a disservice to Child for Child to attend a half-day, rather than full-day, kindergarten program. N.T., 5/10/2023, at 6. He said that he and his wife would be willing to pay "the excess costs" of the full-day kindergarten program, which he believed would be "$3,000, $3,500, something like that." *Id.* at 7.

Father also presented the testimony of a parent with children at Hinkletown, Rus Akinin. He testified that his son was attending kindergarten at Hinkletown at the time of the hearing, and his two older children also attended the school. He said that his family "absolutely love[s]" Hinkletown, and it was "very conducive to [their] family life and family values." *Id.* at 11. He stated they are satisfied with their children's academic progress, and that his kindergartener is identifying words, reading sight words, and can count to 100. *Id.* at 12. During Akinin's testimony, Father admitted into evidence the kindergarten schedule for Hinkletown. Akinin testified it was consistent with what his son was doing, and that it included language arts, math, fifth-grade buddies, and Spanish. *Id.* at 13-14.

On cross-examination, Akinin testified that part of the values he likes about the school are the religious values. However, he also said he likes the personal responsibility taught and the attention the students receive from the teachers. *Id.* at 15.

Father testified next. He testified Child adjusted well to the preschool at Hinkletown, Father has had positive interactions with the teachers, and Child "loves it." *Id.* at 19. Father testified that he would use his portion of a tax refund to pay for the school and that Paternal Grandfather would help with the tuition. *Id.* at 19-20. He testified that he believed Hinkletown is the best option for Child because he is going to be an older child in the class. Father added that, in his view, if Child has "an opportunity to learn and have more of a cultivated experience in an education sy[stem] where he can learn a little bit more, it would be in his best interest moving forward." *Id.* at 21-22. He said Hinkletown would "better prepare[ Child and] set[] him up for a brighter future to whatever the next step is, whether he continues to Hinkletown or he goes to Highland Elementary for first grade." *Id.* at 22.

Father further testified about Child's kindergarten readiness assessment, which reflected Child was able to write and tell what objects look the same and different, and knew some shapes. *Id.* at 23. He believes Child should go to full-day kindergarten five days a week because it will prepare him for first grade and give him consistency and a routine. *Id.* at 26. Father testified that the teachers and administration at Hinkletown were very

responsive. *Id.* at 27. He also testified as to the school activities and field trips and that the parents are involved in the school. *Id.* at 27-28.

On cross-examination, Father testified that S.K. goes to Highland and is doing well there. *Id.* at 30.

The principal of Highland Elementary, Brett Michael Esbenshade, testified that Highland is in the Ephrata School District and has classes from kindergarten through fourth grade. *Id.* at 35-36. They have 456 children enrolled, and have seven sections of half-day kindergarten. *Id.* The kindergarten classes have 11 to 16 children per teacher, with an average of 15 students per teacher. *Id.* at 37. He testified that in the half-day kindergarten program, there is math, English language arts, which includes writing foundations, small group instruction, and reading, and that science and social studies are incorporated into the other areas. *Id.* at 38-39. He testified they offer library, art, music, and physical education to the kindergarten students. *Id.* at 39. He testified that Highland has a strong PTO, with many events, and the school has field trips. *Id.* at 40-41.

Mother testified next. She stated she would like Child to attend Highland Elementary with his sister, S.K. *Id.* at 50. She stated she has been happy with S.K.'s education at Highland, and the school "ha[s] a very strong reputation for good academics but also even extending beyond." *Id.* She testified they have a lot of parent involvement and do a lot to develop a sense of community. *Id.* Mother testified that S.K. takes her "role as big sister very seriously" and enjoys showing Child "the ropes," and Mother thinks it would be beneficial for

both children if they attended the same school. *Id.* at 51. She stated they would see each other in the hallways and would either go to or from school together. *Id.* Mother testified S.K. attended kindergarten at Highland and they have a "full jam[-]packed academic day," where they focus on academics, but "also tend to their social and emotional side of things." *Id.* at 52. S.K. "loved it when she was there for kindergarten," and Mother has a high impression of the teachers. *Id.*

Mother testified she is certified to teach kindergarten through sixth grade and previously worked at a preschool program and spent two years as a kindergarten teacher. *Id.* at 53. She stated she has concerns about the academic quality of Hinkletown's program, including a concern that, because it is private, there is less accountability. *Id.* at 54. She testified Hinkletown did not have data as to how its students performed compared to students outside its program. *Id.* She testified that she believed that "socially and emotionally the Hinkletown program has served [Child] well, but academically [she does] not feel that he is ready for kindergarten." *Id.* at 55. She pointed out that in the assessment he knew only seven letters. *Id.* She further testified that it is "very clear in the Hinkletown programs that they are providing an anti-Baptist [sic] education and that's something that parents are signing up for when they sign their children to attend." *Id.* at 66. She explained that she considers herself non-denominational and "do[es] not agree that it's the place of a school to provide religious education . . . for the students." *Id.* She stated that she did not want her children to "be indoctrinated in an anti-Baptist [sic]

religion." *Id.* at 66-67. She stated that most of the preschools in the area are through churches and she thought it was fine for preschool, where it was a three half-day program. *Id.* at 68. She stated that the Bible classes and instruction become "a little bit more prominent as time goes on." *Id.*

In May 2023, the trial court ordered that Child "shall attend the full day Kindergarten program at the Hinkletown Mennonite School for the 2023-2024 academic school year only." Order, May 15, 2023. Mother filed a timely notice of appeal.

Mother raises the following issues:

> I. Whether the trial court abused its discretion and/or erred as a matter of law in separating the siblings from the schools that they would attend.
>
> II. Whether the trial court abused its discretion and/or erred as a matter of law in directing [Child] to attend a religious school rife with religious training when neither parent is Mennonite [n]or following the Anabaptist faith.
>
> III. Whether the trial court abused its discretion and/or erred as a matter of law in imposing a significant financial burden on the parties when the paternal grandfather was obligating himself to pay the full tuition.
>
> IV. Whether the trial court abused its discretion and/or erred as a matter of law in failing to give proper weight to which school afforded [Child] a better education.

Mother's Br. at 4.[1]

"We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad." *S.W.D. v. S.A.R.*, 96 A.3d

_____

[1] Father did not file an appellate brief.

396, 400 (Pa.Super. 2014). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa.Super. 2016) (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.* We must accept the findings of the trial court if supported by the evidence, and we defer to the trial court regarding credibility determinations and weight of the evidence. *S.W.D.*, 96 A.3d at 400. "We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings." *Id.*

"The paramount concern in child custody cases is the best interests of the child." *C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018) (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *M.J.N. v. J.K.*, 169 A.3d 108, 112 (Pa. Super. 2017).

Section 5328 of the Child Custody Act requires a trial court to consider all best interests factors when "ordering any form of custody." 23 Pa.C.S.A. § 5328(a). However, not every decision by a trial court in a custody case involves an award of custody. *S.W.D.*, 96 A.3d at 402. There is no statutory requirement that a trial court apply the Section 5328(a) custody factors when it decides a "discrete and narrow issue ancillary to a materially unchallenged custody arrangement." *M.O. v. J.T.R.*, 85 A.3d 1058, 1059 (Pa.Super. 2014).

- 7 -

Therefore, a trial court must consider a child's best interest when ruling upon issues that are ancillary to the custody arrangement, but need not consider all 16 factors unless it is awarding or modifying custody. *Id.* at 1063 n.4.

Mother first argues the court erred in failing to keep Child and S.K. in the same school, asserting that keeping the siblings together would be in Child's best interest. She argues that although the trial court did not need to analyze the 16 custody factors, it had to consider Child's best interest, which would include sending siblings to the same school. She maintains that "Father's different treatment of his children in terms of where they attend kindergarten has no support in the record, factually or legally, and this fact alone should result in the trial court's decision being overturned." Mother's Br. at 6. Mother argues Father's reasons for keeping Child at Hinkletown are "non-sensical and [he] offer[s] no facts to support his conclusion." *Id.* at 9. She thus maintains that the trial court's reliance on Father's reasons was unreasonable. She asserts she testified as to why the siblings should attend the same school and argues "[s]eparating a sister who protects her younger brother and a younger brother who looks up to and emulates his older sister is important," and "all the evidence suggested" separating the siblings would not be in Child's best interest. *Id.* at 12.

The trial court concluded that continuing to attend Hinkletown Mennonite School would be in Child's best interest:

> [T]he trial court found that it was in the Child's best interest
> to continue attending Hinkletown . . . . First, the trial court
> believes that [Child] would be better served by attending a

- 8 -

> 5-day a week full day kindergarten program like the one offered by Hinkletown. Additionally, [Child] attended pre-school at Hinkletown . . . previously and performed well there. The trial court reviewed a Kindergarten Readiness Assessment from Hinkletown that corroborated [Child's] readiness to move to kindergarten. If [Child] were to attend Highland . . . the only option would be a half day program. The trial court believes that it is in [Child's] best interest to attend a full-day program, five days a week. Father testified, and the court agrees, that full-time kindergarten would better prepare [Child] for first grade.

Trial Court Opinion, filed July 7, 2023, at 4-5 (unpaginated) ("1925(a) Op.")

The record supports the trial court's factual findings and it did not abuse its discretion when finding that attending Hinkletown would be in Child's best interest. Although attending the same school as his sibling may have weighed in favor of Child attending Highland, the trial court weighed all the evidence and determined that attending the full-day kindergarten at Hinkletown would be in Child's best interest. We cannot say the court's ruling was outside the bounds of its discretion.

Mother next contends the trial court erred in ordering Child to attend a religious school over Mother's objection. She points out that neither parent practices the Mennonite, Anabaptist faith and that she is opposed to her son being educated in the faith. She argues that the religious instruction becomes more intensive with each year and therefore that she allowed Child to attend the preschool program should not constitute a waiver of her current objection. Mother points out that she testified that she believes religious instruction should be for the parents.

The trial court concluded Mother's religious objection was disingenuous:

> Mother and Father previously agreed for [Child] to attend Hinkletown for the Pre-Kindergarten programming, knowing the religious based curriculum of the school. The Court finds Mother's newly raised objection disingenuous and not credible. Father would still like the Child to attend Hinkletown and did not raise any concerns about [Child] being exposed to the Mennonite religion. Therefore, the Court finds that this argument is without merit.

1925(a) Op. at 5 (unpaginated).

We defer to a trial court's credibility finding when supported by the record, as it is here. Although at the hearing Mother raised concerns regarding the religious instruction at Hinkletown, she permitted Child to attend pre-school at the school. This issue lacks merit.

Mother next argues the trial court abused its discretion and erred as a matter of law in placing a financial burden on non-parents. She argues the court ordered that Child attend a private school and therefore should have had to find that the parents had the financial ability to pay for the school, and not place the obligation on Paternal Grandfather who has no legal obligation to pay.

The trial court concluded Father and Paternal Grandfather testified they would pay for the tuition, and the court found the testimony credible:

> Father and [P]aternal [G]randfather both testified they would be able to cover the costs of the school. Paternal [G]randfather testified that he is willing to pay at least $3,000 of the tuition. The trial court found this testimony to be credible and therefore finds that Mother's argument is without merit.

1925(a) Op. at 5 (unpaginated).

The record supports the court's credibility and factual findings. It was not error for the court to conclude, based on the testimony, that Father and Paternal Grandfather would pay the cost. This is so, even though Paternal Grandfather was not a party to the custody dispute.

Mother next argues the court abused its discretion or erred when it dismissed Mother's testimony regarding which school would be better for Child, and relied on Father's testimony, as he is not an educator and did not research the differences between the schools. She maintains the trial court found the full-day kindergarten program better "without any plausible, admissible evidence to support such a finding." Mother's Br. at 16. She argues she testified about concerns regarding Child's readiness for kindergarten, Highland's principal testified about its academic programming, and maintains that Father "offered no real facts to support that his chosen religiously based school was academically superior, much less on par, to the public school their daughter attends." *Id.* at 16-17.

As discussed above, the trial court reviewed the evidence and concluded attending the full-day kindergarten program at Hinkletown was in Child's best interest. Contrary to Mother's contention, Father presented evidence that attending the full-day kindergarten program at Hinkletown would be in Child's best interest, including his own testimony, the testimony of another parent of a kindergartner at Hinkletown, the kindergarten readiness assessment, and the kindergarten schedule for the Hinkletown program. The court did not err or abuse its discretion in reaching its conclusion.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/2/2023